STATE OFFICERS AND EMPLOYEES
Conversion privileges provided by Section 11, Senate Bill No. 73, Thirty-sixth Oklahoma Legislature, First Session are limited to continuation of health insurance plan benefits only and does not contemplate nor would it be possible for an insurance contract to be provided to such converting persons. It is further the opinion of the Attorney General that no life insurance plan benefits would be convertible in that the legislative intent is to limit said conversion privileges to health benefits only as indicated above. It is further the opinion of the Attorney General that all entities allowed to participate in the benefits of the State Employees Group Health and Life Insurance Act as set forth in 74 O.S. 1315 [74-1315] (1976) as amended by Section 10 of Senate Bill No. 73 above cited must pay their pro rata share of all costs attributable to their participation therein but are to pay the same contribution rate for the benefits provided as is paid by State employees. It is further the opinion of the Attorney General that Section 5 of Senate Bill No. 73 above cited which amends 74 O.S. 1306 [74-1306] (1976) allows the Board governing the health and life insurance plans to bid for a contract of claims administration for all benefits of health and life insurance plans between one or more claims administrators and also allows the Board to retain any part of the administration of either plan that it deems advisable to retain. The Attorney General is in receipt of your letter wherein you ask the following questions in reference to Senate Bill No. 73, Thirty-sixth Oklahoma Legislature, First Session. "1. Specifically what types of conversion privileges will exist under the program? "A. Health Insurance Plan "The bill does not provide conversion privileges for employees who terminate employment, which is currently available to the employees. Section 11 of the bill does provide that a person who retires or elects a vested benefit under the provisions of the State of Oklahoma Retirement System may have 'conversion privileges to the Health Insurance Plan authorized by this Act.' "Does this imply: "(a) an employee described above will have the ability to continue his health insurance coverage under the self-insured program, or "(b) an employee in the above situation may purchase an individual policy from an insurance carrier under some type of conversion right? "B. Life Insurance Plan "The amended statute does not set forth any specific rights relating to conversion of the life insurance coverage. These conversion privileges are currently available to the employees. "Does the Board have the authority to include in the benefit specifications of the self-insurance plan a conversion privilege of all or any portion of the life insurance benefits upon an employee's termination of employment, retirement, or election of a vested benefit under a State Retirement System? "2. Section 10 of S.B. No. 73 extends the benefits of the Group Health and Life Insurance programs to any county, city, town or county hospital electing to participate therein, provided each shall pay all costs attributable to its participation. It further provides that the 'premium' for each participating county, city, town or county hospital shall be the same as paid by the State Group Health and Life Insurance Plan. "It is our understanding that the word 'premium' is not generally utilized in conjunction with a totally self-insured program. Therefore, does the word 'premium' mean the 'total contribution rate' which must be paid by an employer to participate in the plans, or are additional administrative costs to be assessed on a pro rata basis against each such participating employer ? "3. Section 5 of Senate Bill No. 73 provides that the Board shall contract for claims administration services with a private insurance carrier or a company that specializes in claims administration of health care services that is authorized to do business in the State of Oklahoma, etc. It further provides that the Board shall have the authority and duty to contract for a claims administrator for all or any part of the health and life insurance plans. "Does this mean that the Board has the option to: "(a) have all of the claims administration held by one claims administrator, or "(b) that the claims administration for the health and life benefits may be split between the two claims administrators, or "(c) that the Board must contract for claims administration service on the health section of the program but may self-administer the life benefits section of the plan?" With reference to your first question concerning conversion privileges, Section 11 of Senate Bill No. 73 provides as follows: "SECTION 11. 74 O.S. 1316 [74-1316] (1971), is amended to read as follows: "74 O.S. 1316 [74-1316]. Retired persons or persons electing vested benefits Conversion privileges "Any person who retires or who has elected a vested benefit under the provisions of the State of Oklahoma Retirement Systems may have conversion privileges to the Health Insurance Plan authorized by this act." Prior to its amendment by Senate Bill No. 73, 74 O.S. 1316 [74-1316] (1971) provided as follows: "74 O.S. 1316 [74-1316]. Persons leaving employment-Conversion privileges. — Any person who leaves the employment of the State of Oklahoma shall have conversion privileges." As stated in your question, employees under the existing law who are covered under the group insurance plans may convert upon termination of employment their health and life insurance to a private policy with the carrier who was the successful bidder on the state insurance program. Senate Bill No. 73, however, now has substantially altered the health insurance program of the State of Oklahoma as set forth in Section 1 of Senate Bill No. 73 which now provides in part as follows: "SECTION 1. 74 O.S. 1303 [74-1303] (1971), is amended to read as follows: ". . . (c) 'Carrier' means the State of Oklahoma. "(d) 'Health Insurance Plan' means a self-insured plan by the State of Oklahoma for the purpose of paying the cost of hospital and medical care up to the maximum coverage provided by said plan. "(e) 'Life Insurance Plan' means a self-insured plan for the purpose of paying death and dismemberment benefits up to the maximum coverage provided by said plan." Prior to its amendment, 74 O.S. 1303 [74-1303] (c)(d)(e) and (f) (1971) provided as follows: "1303. ". . . "(c) 'Carrier' means a private insurance company holding a valid outstanding certificate of authority from the State Insurance Commissioner, or a nonprofit hospital service plan or a nonprofit medical service or indemnity plan incorporated as a nonprofit corporation pursuant to Title XXXVI, Article 26 Oklahoma Statutes. "(d) 'Qualified carrier' means a carrier, as defined in subsection (c) of this section, which has had successful experience in the group health and life insurance fields and has surplus in regard to policyholders in excess of One Million Dollars ($1,000,000.00) or in lieu thereof has on file with the Insurance Commissioner a reinsurance treaty covering accident and health insurance and life insurance. "(e) 'Health Insurance Plan' means a group insurance policy or contract or a medical or hospital service agreement provided by a carrier for the purpose of paying the cost of hospital and medical care up to the maximum coverage provided by said plan. "(f) 'Life Insurance Plan' means a group insurance policy or contract provided by a carrier for the purpose of paying death and dismemberment benefits up to the maximum coverage provided by said plan." It is thus apparent that the legislative intent evidenced by Senate Bill No. 73 is to change from an insured program of health and life insurance for State employees to a self-insured program which will be administered in whole or in part by a claims administrator as discussed later. Title 74 O.S. 1316 [74-1316] (1971) as amended by Senate Bill No. 73, sets forth the specific conversion privileges to be allowed under the new program and that conversion privilege is limited to the health insurance plan only and because of the self-insured nature of the new program, would not enable or make possible a conversion of the health program to an insurance policy. Your second question concerns Section 10 of Senate Bill No. 73 which provides as follows: "SECTION 10. 74 O.S. 1316 [74-1316] (1971), is amended to read as follows: "74 O.S. 1315 [74-1315]. Participation by county, city, town or county hospital employees "Upon application in writing approved by a majority action of the board of county commissioners of any county or the governing body of any city, town or county hospital participating in the Oklahoma Public Employees Retirement System, the Board may extend the benefits of the State Employees Group Health and Life Insurance Act to all full-time employees of such county, city, town or county hospital, provided that such county, city, town or county hospital participating therein shall pay all costs attributable to its participation therein. The premium for participating counties, cities, towns and county hospitals shall be the same as paid by the State Group Health and Life Insurance Plan." Prior to its amendment by Senate Bill No. 73, 74 O.S. 1315 [74-1315] above provided as follows: "74 O.S. 1315 [74-1315]. Participation by county, city, town or county hospital employees. — Upon application in writing approved by a majority action of the county commissioners of any county or the governing body of any city, town or county hospital participating in the Oklahoma Public Employees Retirement System, the Board may extend the benefits of the State Employees Group Health and Life Insurance Act, 1301 through 74 O.S. 1316 [74-1316], to all or any part of the employees of such county, city, town or county hospital, provided that such county, city, town or county hospital, participating therein shall pay all costs attributable to its participation therein, and the insurance carrier shall individually underwrite each county, city, town or county hospital for premium purposes. Claim experience shall be provided for each of the counties, cities, towns or county hospitals and separately experience rated annually by the insurance carrier." It is thus apparent with reference to participation by the entities set forth in 74 O.S. 1315 [74-1315] that the only significant change by reason of Senate Bill No. 73 is that such entities are not to be separately experience rated but are to be charged the same premium or rate for its employees to obtain the benefits provided by the State Employees Group Health and Life Insurance Act as are paid by state employees. In addition thereto, each of those participating entities set forth in 74 O.S. 1315 [74-1315] are to continue to pay all costs attributable to its participation therein. Your third question refers to Section 5 of Senate Bill No. 73 which provides in part as follows: "SECTION 5. 74 O.S. 1306 [74-1306] (1971), as amended by Section 1, Chapter 116, O.S.L. 1974 (74 O.S. 1306 [74-1306] (1976)), is amended to read as follows: "74 O.S. 1316 [74-1316]. Powers and duties of Board "(1) The Board shall administer and manage the Health and Life Insurance Plans and, subject to the provisions of this act, shall have the following powers and duties: ". . . " (b) The authority and duty to request bids through the Purchasing Division of the State Board of Public Affairs, for a contract to be the claims administrator for all or any part of the Health and Life Insurance Plans; ". . . "(3) The Board shall contract for claims administration services with a private insurance carrier or a company that specializes in claims administration of health care services that is authorized to do business in the State of Oklahoma, and no contract for claims administration services shall be made unless such contract has been offered for bids through the Purchasing Division of the State Board of Public Affairs." The above-quoted sections of Senate Bill No. 73, Section 5, which amends 74 O.S. 1306 [74-1306] (1976), read together indicate that the Legislature intended that the Board have the widest latitude possible in contracting with a claims administrator for all or any part of the health and life insurance plans. Therefore, subparts (a), (b) and (c) of your question number three are all answered in the affirmative in that all of the claims administration of both health and life plans may be contracted by the Board with one carrier or such duties may be split between one or more carriers or the Board may retain and administer itself any part of the health or life insurance plan that it deems advisable. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Conversion privileges provided by Section 11, Senate Bill No. 73, Thirty-sixth Oklahoma Legislature, First Session, are limited to continuation of health insurance plan benefits only and does not contemplate nor would it be possible for an insurance contract to be provided to such converting persons. It is further the opinion of the Attorney General that no life insurance plan benefits would be convertible in that the legislative intent is to limit said conversion privileges to health benefits only as indicated above. It is further the opinion of the Attorney General that all entities allowed to participate in the benefits of the State Employees Group Health and Life Insurance Act as set forth in 74 O.S. 1315 [74-1315] (1976) as amended by Section 10 of Senate Bill No. 73 above cited must pay their pro rata share of all costs attributable to their participation therein but are to pay the same contribution rate for the benefits provided as is paid by state employees. It is further the opinion of the Attorney General that Section 5 of Senate Bill No. 73 above cited which amends 74 O.S. 1306 [74-1306] (1976) allows the Board governing the health and life insurance plans to bid for a contract of claims administration for all benefits of health and life insurance plans between one or more claims administrators and also allows the Board to retain any part of the administration of either plan that it deems advisable to retain. (JAMES E. GRAY)